**Electronically Filed
Supreme Court
SCWC-16-0000559
15-MAR-2023
12:33 PM
Dkt. 25 OP**

IN THE SUPREME COURT OF THE STATE OF HAWAI'I

---o0o---

_____

PUBLIC ACCESS TRAILS HAWAI'I, a Hawai'i Nonprofit Corporation,
and DAVID BROWN, JOE BERTRAM, III; KEN SCHMITT; for themselves
individually, and on behalf of the certified class members,
Petitioners/Plaintiffs-Appellants,

vs.

HALEAKALA RANCH COMPANY, a Hawai'i Corporation; STATE OF HAWAI'I,
WILLIAM AILĀ, JR., in his official capacity as the Director of
the State of Hawai'i DEPARTMENT OF LAND AND NATURAL RESOURCES and
chair of the State of Hawai'i BOARD OF LAND AND NATURAL
RESOURCES; DEPARTMENT OF LAND AND NATURAL RESOURCES,
Respondents/Defendants-Appellees.

DEPARTMENT OF LAND AND NATURAL RESOURCES, STATE OF HAWAI'I,
Respondent/Cross-Claimant-Appellee,

vs.

HALEAKALA RANCH COMPANY, a Hawai'i Corporation,
Respondent/Cross-Claim Defendant-Appellee.

_____

SCWC-16-0000559

CERTIORARI TO THE INTERMEDIATE COURT OF APPEALS
(CAAP-16-0000559; CIV. NO. 11-1-0031(3))

MARCH 15, 2023

RECKTENWALD, C.J., NAKAYAMA, McKENNA, WILSON, AND EDDINS, JJ.,
WITH McKENNA, J., ALSO CONCURRING SEPARATELY,
WITH WHOM WILSON, J., JOINS

OPINION OF THE COURT BY WILSON, J.

## I.  INTRODUCTION

This case involves the recovery of attorneys' fees and costs by a plaintiff from a private defendant under the private attorney general ("PAG") doctrine.

Petitioners/Plaintiffs-Appellants Public Access Trails Hawai'i ("PATH"); David Brown; Joe Bertram, III; and Ken Schmitt (collectively "Petitioners") prevailed against Respondent/Defendant-Appellee Haleakalā Ranch Company ("HRC") in procuring a judgment from the Circuit Court of the Second Circuit ("circuit court") that the State of Hawai'i ("State"), not HRC, owned a portion of Haleakalā Trail that ran over HRC's property. This appeal stems from Petitioners' attempt to recover attorneys' fees from HRC under the PAG doctrine.

The PAG doctrine remains an essential tool for promoting the vindication of public rights.  Because eligible plaintiffs may recover attorneys' fees, the PAG doctrine enables litigation in the public's interest by relieving otherwise prohibitive costs and burdens assumed by individuals and public interest groups.  To date, the PAG doctrine has promoted litigation aimed at the preservation and conservation of

Hawaii's land and natural resources, as well as litigation vindicating the rights of the Native Hawaiian community. The viability of the PAG doctrine hinges on plaintiffs being able to rely on the doctrine's promise that they will receive reasonable compensation for their efforts on behalf of the public. We hold that this promise translates into allowing plaintiffs who recover attorneys' fees and costs under the PAG doctrine to also recover those fees and costs reasonably incurred in litigating their initial claim for fees ("fees on fees").

We also hold that a plaintiff may recover attorneys' fees under the PAG doctrine from a private defendant even where the State voluntarily participated as a co-litigant in the case. The State's participation pursuant to a joint prosecution agreement, or other agreement to co-litigate, is not dispositive with respect to whether a plaintiff's private enforcement efforts were necessary under the PAG doctrine.

Because the Intermediate Court of Appeals ("ICA") held to the contrary, we vacate the ICA's March 31, 2021 Judgment on Appeal and remand to the circuit court for proceedings consistent with this opinion.

## II.  BACKGROUND

**A.   Factual Background**

**1.   Pretrial Proceedings**

On January 18, 2011, Petitioners filed a complaint against HRC and William Ailā, Jr., in his official capacity as the Director of the State of Hawai'i Department of Land and Natural Resources ("DLNR") and Chair of the State of Hawai'i Board of Land and Natural Resources ("BLNR") (hereinafter "the State"), seeking to restore public access to Haleakalā Trail on the island of Maui.[1]  On March 31, 2011, the State filed a motion to dismiss the case, which HRC joined.  The circuit court[2] entered an order denying in part and granting in part the State's motion to dismiss.[3]

### a. Joint Prosecution Agreement Between Petitioners and the State

On December 26, 2012, Petitioners and the State entered into a joint prosecution agreement ("JPA"), in which Petitioners and the State agreed to jointly prosecute Count III (claims under the Highways Act of 1892 and Hawai'i Revised Statutes ("HRS") § 264-1 (2008)) and Count IV (claim to quiet

---

[1] The Complaint consisted of:  Count I (public trust); Count II (customary and traditional access); Count III (Highways Act of 1892 and HRS § 264-1); Count IV (quiet title); Count V (public nuisance); Count VI (HRS § 6E - historic preservation); and Count VII (due process).  Petitioners filed their Second Amended Complaint on August 30, 2013, which is substantively similar to their first Complaint, but was updated to reflect class certification and to identify the specific portion of Haleakalā Trail by an attached metes and bounds survey.

[2] The Honorable Joseph E. Cardoza presided.

[3] The circuit court denied Petitioners' claims seeking declaratory relief under HRS chapter 669, under the Highways Act of 1892 and HRS § 264-1 (on the grounds that those statutes did not create a private right of action), and under 42 U.S.C. § 1983.

4

title) of the Petitioners' original complaint.  Petitioners agreed to dismiss without prejudice their claims against the State, and the State agreed to file a cross-claim against HRC asserting ownership of Haleakalā Trail.

The JPA stated, in relevant part, that the State shall:  "at minimum, join with the [Petitioners] on substantive motions in Court against HRC with respect to the [JPA], or join and support any appellate arguments" related to the JPA; "coordinate with [Petitioners] in the preparation of evidence for motions, evidentiary hearings, and/or trial against HRC on the [JPA]"; and "not object to any efforts by [Petitioners] to seek from HRC attorneys' fees and costs of suit pursuant to the [PAG] doctrine, and/or as otherwise permitted by law[,]" should Petitioners prevail against HRC.  The JPA also stated that "[a] Party's sole remedy for a material breach [of the JPA] is to seek from the Court a return to the status quo before this Agreement was signed."

In joining Petitioners' motion to the circuit court to approve the JPA, the State posited that although it "did not believe [Petitioners] could try title to property that [Petitioners] do not own or have an interest in[,]" because the circuit court disagreed, "the State necessarily supports [Petitioners'] position that the State, not HRC, owns the property."  The State declared that "[Petitioners] and the State

want the same outcome as to ownership of the property[,]" and noted that Petitioners "will continue to take the lead role in the litigation but benefit from State support."

On February 4, 2013, the court filed an order granting Petitioners' motion to approve the JPA. Pursuant to the JPA, on March 6, 2013, the DLNR filed its cross-claim against HRC, and on March 27, 2013, the circuit court ordered all of Petitioners' claims against the State dismissed without prejudice.

### b.    Circuit Court's Bifurcation Order

On May 3, 2013, the circuit court ordered the trial bifurcated into two phases. Phase one of trial consisted of (1) the State's cross-claim against HRC to quiet title, (2) the public right of way element of Petitioners' public nuisance claim against HRC, and (3) HRC's cross-claim against the State, asserting that HRC was the sole and exclusive owner of Haleakalā Trail.

### c.    Proposed Land Exchange Between the State and HRC

In or about September 2013, HRC and the DLNR began negotiating a land exchange, in which the DLNR agreed to give up its interest in Haleakalā Trail in exchange for construction of a jeep trail on HRC property that would provide access to the State Forest Reserve. On November 14, 2013, Petitioners sent a letter to the BLNR voicing their concerns regarding the proposed land exchange and reiterating their position that the State

should focus on obtaining public access to Haleakalā Trail. Petitioners asserted in their letter, among other things, that the "DLNR's willingness to pursue the land exchange, or even to evaluate it" violated the terms of the JPA. On December 16, 2013, Petitioners sent a similar letter to the BLNR, which urged the BLNR to defer placing the proposed land exchange on its agenda for consideration. On January 8, 2014, Petitioners sent a letter urging the BLNR to refrain from making a decision on the proposed land exchange at its upcoming meeting on January 10, other than to approve further environmental and archeological review. At the BLNR's January 10 meeting, the BLNR heard testimony from Petitioners, HRC, and State officials. The BLNR ultimately decided not to approve the land exchange, citing the need to collect more information about the environmental impact of such an exchange.

### d. Petitioners' HRS § 607-14.5(c) Notice to HRC

On October 24, 2013, pursuant to HRS § 607-14.5(c) (2016),[4] Petitioners sent a written letter to HRC requesting that

_____

[4] HRS § 607-14.5(c) states:

A party alleging that claims or defenses are frivolous may submit to the party asserting the claims or defenses a request for withdrawal of the frivolous claims or defenses, in writing, identifying those claims or defenses and the reasons they are believed to be frivolous. If the party withdraws the frivolous claims or defenses within a reasonable length of time, the court shall not award attorneys' fees and costs based on those claims or defenses under this section.

HRC:  (1) withdraw its frivolous claims and defenses that it owned Haleakalā Trail, (2) stipulate that the State owned Haleakalā Trail, and (3) pay Petitioners $500,000.00 in attorneys' fees.[5]  On October 29, 2013, HRC sent back a two-sentence rejection of Petitioners' demand.

### e.    Petitioners' Motion for Summary Judgment on the Issue of State Ownership

On November 20, 2013, Petitioners filed a motion for partial summary judgment ("MPSJ"), alleging that there was no genuine dispute of material fact that the State owned in fee simple the portion of Haleakalā Trail that fell within HRC's private property.[6]

On December 11, 2013, at a hearing on Petitioners' MPSJ, Petitioners argued that they had met their burden of showing that Haleakalā Trail was "open, laid out, and built" by the State and that the State "never relinquished the trail by due process of law."  Petitioners emphasized "that the location of the trail is not before the Court right now" and that they were "not asking the Court to determine that at this stage."

---

[5]    Petitioners state that "similar notice" was provided to HRC nearly eight months earlier on February 29, 2013.  On February 26, 2013, PATH sent HRC an email countering several of HRC's arguments that it owned the Trail, with supporting case law attached, stating that it "wanted to make sure HRC was aware of these cases before it continue[d] to trial."

[6]    In support of their MPSJ, Petitioners submitted the testimony of an expert trail witness opining that Haleakalā Trail was a trail "opened, laid out, and built" by the State for public use.

The circuit court, however, in denying Petitioners' MPSJ, pointed to the "good deal of discussion about the location" of Haleakalā Trail, and stated, "I do think in this instance that location [of Haleakalā Trail] is part and parcel of what would be required to create a record that could allow the Court to grant the motion."

### f.    State Support of Senate Bill 2728

On January 17, 2014, State Senator J. Kalani English introduced Senate Bill 2728 ("S.B. 2728") as a proposed amendment to the Highways Act, as codified at HRS § 264-1.  S.B. 2728, 27th Leg., Reg. Sess. (Haw. 2014).  S.B. 2728, as originally introduced, stated that the legislature had the authority to "declare[]" public trails.  Id.  S.B. 2728 also included a provision making it retroactive to January 1, 2011, which would have effectively mooted Petitioners' complaint, which was filed on January 18, 2011.  Id.  The DLNR submitted testimony stating that it "support[ed] the intent" of S.B. 2728.  Hearing on S.B. 2728, S.D. 2, Before the H. Comm. on Transportation, 27th Leg., Reg. Sess. (Haw. 2014) (testimony of William J. Ailā, Jr., Chairperson, BLNR); Hearing on S.B. 2728, S.D. 1, Before the S. Comm. on Ways & Means, 27th Leg., Reg. Sess. (Haw. 2014) (testimony of William J. Ailā, Jr., Chairperson, BLNR); Hearing on S.B. 2728, Before the S. Comm. on Transportation & Int'l Affairs, 27th Leg., Reg. Sess. (Haw.

9

2014) (testimony of William J. Ailā, Jr., Chairperson, BLNR).  A subsequent draft of S.B. 2728 incorporated an amendment proposed by the DLNR that "subject[ed]" public trails to "being accepted by the [BLNR]."  S.B. 2728, H.D. 1, 27th Leg., Reg. Sess. (Haw. 2014).  Petitioners submitted testimony in opposition to S.B. 2728.  Hearing on S.B. 2728, Before the S. Comm. on Transportation & Int'l Affairs, 27th Leg., Reg. Sess. (Haw. 2014) (testimony of David Henderson Brown, PATH).  Ultimately, S.B. 2728 died in committee and was not enacted.

### 2.  Jury Trial on Phase One Issues

On March 17, 2014, a jury trial commenced to determine the phase one issues.[7]  PATH, on behalf of Petitioners, and the State participated in the voir dire process, and both delivered opening statements once the jury was empaneled.  During trial, PATH performed the direct examination of Petitioners' three expert witnesses:  Anthony Crook (expert in surveying and mapping), Richard Stevens (expert in world history and trail research), and Doris Moana Rowland (expert in the Hawaiian islands, title research, and translation of Hawaiian documents).  PATH also performed the cross-examination of the State's expert witness, Patrick Cummins (expert in mapping and surveying of trails and roads in Hawai'i).  PATH and the State delivered

---

[7]     See supra section II.A.1.b.

10

closing arguments on April 22, 2014, and trial adjourned after five weeks on April 23, 2014.

### a. Circuit Court's Judgment

On December 19, 2014, the circuit court entered its judgment on phase one of the jury trial. Consistent with the jury's special verdict delivered on April 23, 2014 in favor of Petitioners, the circuit court declared and ordered, in relevant part, that:

> 2. Haleakala Trail is a public right of way under the Highways Act of 1892 by virtue of being opened, laid out, or built by the Government in 1905.
>
> 3. Haleakala Trail is a public right of way under the Highways Act of 1892 by virtue of being the successor trail to a trail in existence before 1892.
>
> 4. Haleakala Trail is a public right of way by virtue of being the successor trail to a trail in existence before the Mahele of 1848.
>
> 5. Haleakala Trail has not been abandoned by the Government by due process of law.
>
> 6. The State owns Haleakala Trail in fee simple.
>
> . . . .
>
> 8. Haleakala Trail is a public right of way and therefore Plaintiff's[sic] have proven the first element of their public nuisance claim against [HRC].

### 3. Settlement Agreement

On December 19, 2014, the same day the circuit court issued its phase one judgment, Petitioners, the State, and HRC

11

mediated a settlement agreement ("Settlement").[8]  The handwritten

Settlement states, in relevant part:

> The parties agree as follows:
>
> All claims in Phase I of the trial are final and nonappealable and HRC may not request a new trial.
>
> All claims for Phase II of the trial are dismissed with prejudice by Plaintiffs.
>
> The parties agree as follows with respect to Plaintiffs[sic] attorneys' fees motion:
>
> - The motion will be heard by Judge Cardoza, whose decision may be appealed by either party[.]
> - HRC further agrees that it will not seek any form of land exchange of Haleakala Trail with the State.
> - Plaintiff's[sic] motion for attorneys' fees will be heard by Judge Cardoza in his courtroom in the normal course[.]

The Settlement was signed by Petitioners, the State, and HRC.

### 4. Attorneys' Fees

#### a. For Phase One of the Trial

##### 1. Petitioners' First AF Motion

On December 16, 2014, Petitioners filed a "Motion for

Attorneys' Fees and Costs for Phase One of Trial" ("first AF

motion") requesting attorneys' fees in the amount of

$1,108,915.30 and costs in the amount of $24,871.00 for a total

of $1,133,786.30 pursuant to the PAG doctrine.  Petitioners also

requested that the circuit court issue written findings that (1)

---

[8]  The copy of the Settlement in the record was submitted as Exhibit A of Petitioners' March 2, 2015 motion to the circuit court to approve the Settlement on behalf of the certified class members.  Petitioners explain that the Settlement was redacted as to provisions pertaining to Petitioners' first motion for attorneys' fees, which was then-pending before the circuit court.

"HRC failed to admit to the genuineness of documents and the truth of matters" during discovery, which "were later proved during phase one of the trial[,]" and (2) "HRC's claim of private ownership of the Trail was made in bad faith[.]"

Petitioners argued they were entitled to attorneys' fees because they were a prevailing party and, pursuant to the PAG doctrine, "were solely responsible for vindicating [the] important public policy" of protecting Haleakalā Trail under the Highways Act, which set an "important precedent" that may be used to "protect similar historic trails and roads in Hawaiʻi for the benefit of current and future generations." Petitioners argued that the circuit court should apply the PAG doctrine after considering the following three factors: "(1) the strength or societal importance of the public policy vindicated by the litigation, (2) the necessity for private enforcement and the magnitude of the resultant burden on the plaintiff, and (3) the number of people standing to benefit from the decision." Honolulu Constr. & Draying Co. v. DLNR (Irwin Park II), 130 Hawaiʻi 306, 308, 310 P.3d 301, 303 (2013).

As to the first factor, Petitioners asserted that "protection and preservation of public and historic trails . . . is a significant public policy." Petitioners emphasized that even though the litigation "involved the protection of [only] one historic trail," their verdict "st[ood] as a precedent that

w[ould] further the ultimate goal of the [PAG] doctrine[.]" Petitioners pointed to a number of other "important public policies in addition to" the "protection and preservation of historical trails," which included confirming the scope of the Highways Act and clarifying a party's right to bring a public nuisance action and/or an action under the Highways Act.

As to the second factor of the PAG doctrine, Petitioners cited Irwin Park II in arguing that even though the State participated in the litigation against HRC, Petitioners were "'solely responsible' for vindicating the State's ownership of Haleakalā Trail as a public right of way." Irwin Park II, 130 Hawai'i at 316, 310 P.3d at 311. Petitioners emphasized the State's failure to assert ownership or contest HRC's claim of private ownership of the Trail dating back to 2003, including the State's 2007 actions "negotiating a memorandum of agreement ["MOA"] that gave unilateral control of Haleakalā Trail to HRC and failed to acknowledge State ownership." Petitioners argued that "the State took the lead role in seeking" to have their 2011 class action against HRC and the State dismissed. Petitioners claimed that even after the State entered into the JPA and Petitioners dismissed their claims against the State, the State "still vigorously worked outside the courtroom to undermine" Petitioners, taking actions that would have severely damaged or mooted Petitioners' case, including negotiating a

14

land exchange with HRC and supporting the passage of S.B. 2728. Petitioners also emphasized the lack of effort the State expended as a cross-claimant against HRC, and noted that Petitioners had assumed most of the costs and expenses of preparing for and arguing their case at trial.

As to the third factor of the PAG doctrine, Petitioners argued that the litigation stood to benefit a "significant" number of people, including, not only the people who use Haleakalā Trail, but also anyone who seeks to protect other historic trails in Hawai'i under the Highways Act who may rely on this case as precedent. Thus, although Petitioners' case involved only a single trail, Petitioners further relied on Irwin Park II in arguing that the case had a broad impact with "general precedential value for enforcing governmental adherence to the dedication of private land for public parks and as historic sites, and for the enforcement of the government's commitments to the preservation of such parks and historic sites." Irwin Park II, 130 Hawai'i at 319, 310 P.3d at 314.

Finally, Petitioners argued that they were entitled to attorneys' fees because HRC's claim of private ownership of Haleakalā Trail was frivolous and maintained in bad faith. Petitioners asserted that under the "bad-faith exception" to the rule that each party pays its own costs and fees, the circuit court had the "inherent power to curb abuses and promote a fair

15

process, including the power to impose sanctions in the form of attorneys' fees for abusive litigation practices." In re Water Use Permit Applications (Waiāhole II), 96 Hawai'i 27, 29, 25 P.3d 802, 804 (2001). Petitioners also claimed that, under HRS § 607-14.5, the circuit court could award attorneys' fees upon making a written finding that "all or a portion of the claims or defenses made by the party are frivolous and are not reasonably supported by the facts and the law[.]" HRS § 607-14.5(b). Petitioners claimed that "on multiple occasions," as early as 2007 and as recently as a notice letter sent on October 26, 2013 pursuant to HRS § 607-14.5, they informed HRC that its claim of private ownership of Haleakalā Trail had no basis in fact and requested HRC withdraw its claim.[9] Petitioners asserted that HRC provided no rebuttal to these notices or requests. Petitioners noted that, in making its decision regarding attorneys' fees, the circuit court could consider that notice, as contemplated in HRS § 607-14.5, was provided to HRC. See HRS § 607-14.5(b).[10]

---

[9]     See supra section II.A.1.d.

[10]     Petitioners also argued that pursuant to Hawai'i Rules of Civil Procedure ("HRCP") 36 and 37(c), they were entitled to attorneys' fees for HRC's failure during discovery to admit the truth of certain matters and authenticity of certain documents that were later proven true and authentic, respectively, during trial. The circuit court agreed, and awarded Petitioners fees and costs on this basis. This argument is not before this court on appeal, and therefore, will not be discussed further.

To show that the attorneys' fees sought were reasonable and necessarily incurred, Petitioners included their lodestar calculation for the period beginning when HRC was served with their complaint on January 18, 2011, until the jury delivered its special verdict on April 23, 2014, for attorneys' fees totaling $1,108,915.30.[11]

### 2. HRC's Opposition to Petitioners' First AF Motion

On February 6, 2015, HRC filed its opposition to Petitioners' first AF motion. HRC disputed that Petitioners were a prevailing party when they did not prevail "on any of the Counts in the Complaint," and only prevailed as to the first element of their public nuisance claim. HRC argued that the State, not Petitioners, was the prevailing party because the State had "been awarded full relief on all elements of its [quiet title] claim." To the extent that Petitioners' and the State's claims "involved identical proof," HRC cited Fought & Co. v. Steel Eng'g & Erection, Inc., 87 Hawai'i 37, 56, 951 P.2d 487, 506 (1998) in contending that Petitioners had not shown "their services were not duplicative of the State's work."

---

[11] Petitioners also argued that the circuit court should award enhanced fees because counsel represented Petitioners on a contingency basis at a substantially discounted rate, and prepared for a long and complex jury trial, and because the issues involved in the litigation were "of great public interest[.]"

17

HRC argued that Petitioners failed to meet any of the three prongs required to claim fees under the PAG doctrine.  HRC contended that Petitioners did not meet the first prong, which considers the strength of the public policy vindicated by the case, because the quiet title case did not further important public policy.  HRC emphasized that Petitioners did not prevail on their historic preservation claim in phase one of the trial, and that their claim under the Highways Act was dismissed on summary judgment.  HRC noted that HRS chapter 669, which governs quiet title cases, contains no provision for attorneys' fees, and claimed that "[i]t is well established in Hawaii law that no party to a quiet title case has a right to recover attorneys' fees[.]"  HRC argued that "[n]o Hawaii case has applied the [PAG doctrine] to rights or public policies arising from statutory laws that have no provision for attorneys' fees[,]" and that, because the State was not entitled to fees for prevailing on its quiet title claim, Petitioners were similarly "not entitled to such fees simply because they assisted the State's prosecution."

HRC contended that Petitioners did not meet the second prong under the PAG doctrine, which considers the necessity of private enforcement, because the State did not at any time "wholly abandon" or "actively oppose" Petitioners' cause.  HRC asserted that Petitioners "mischaracterize[d] the history of this case" by claiming it was "forced" to file its 2011

18

complaint because the State "abandoned" its ownership claim. HRC, citing a letter to Tom Pierce from Laura H. Thielen, dated Mar. 12, 2008, countered that the State had communicated to Petitioners as early as 2008 that it believed its ownership claim to be "tenuous at best" and was looking to "explore and employ other methods and opportunities to provide public access" to Haleakalā Trail. HRC argued that Petitioners mischaracterized the State's 2006 communications and 2007 MOA with HRC, none of which conceded ownership of Haleakalā Trail, and posited that the State's proposed land exchange with HRC did not necessitate private enforcement, but rather, furthered public policy that favors settlement over litigation. HRC contended that both the MOA and the proposed land exchange were within the scope of DLNR's managerial discretion and were actions taken in the public interest.

HRC argued that the State's initial opposition to Petitioners' complaint stemmed from the fact that the State believed that Petitioners did not have a say in how the State should expend its resources or resolve disputes. Moreover, HRC continued, given that HRC and the State both believe "that the MOA continues to govern public use of the trail," the outcome of this case--"a 6-foot wide trail that leads to the fence line of the National Park boundary, barring further travel"--was "outweighed by the millions of dollars of State and judicial

19

resources spent." HRC stated that finding Petitioners' efforts were necessary "amounts to a finding that a private party can substitute its judgment and interests for that of the State[.]" Moreover, HRC emphasized that any need for private enforcement ended when the State entered into the JPA with Petitioners.[12] HRC argued that if Petitioners "believed the State was failing to meet its joint prosecution obligations," their remedy was claiming a breach of the JPA.

HRC contended that Petitioners did not meet the third prong under the PAG doctrine, which considers the number of people who benefit from the case, asserting that Petitioners were "not advocating for the public but for their own group's rights[.]" HRC emphasized that Petitioners "were forced to narrow their class membership because [their] interests conflict[ed] with other portions of the public[,]" and, moreover, that the number of people who sought and were denied access to Haleakalā Trail was "extremely small." HRC stated: "It is simply disingenuous to suggest that quieting title to a 6-foot wide trail leading to a fence line will have a significant impact on a significant number of people."

---

[12] HRC contended that if the circuit court was persuaded that Petitioners were entitled to attorneys' fees, Petitioners should only recover $244,576.00, the fees accrued through December 26, 2012, the date the JPA was signed.

HRC emphasized that the circuit court's denial of Petitioners' MPSJ, taken together with its denial of Petitioners' motion for judgment as a matter of law and the fact that the case proceeded before a jury, indicated that HRC's ownership claim was not frivolous under HRS § 607-14.5.

HRC rejected the amount of attorneys' fees Petitioners requested in their motion as "unreasonable" and "inaccurate."[13] HRC argued that Petitioners provided sloppy documentation of their counsel's services, failed to provide certain documentation at all, used inappropriate billing methods (e.g., block and quarter hour billing), and requested fees for non-compensable items. HRC contended that the requested billing rates of Petitioners' counsel far exceeded what was reasonable and standard in the industry and in comparison to the rates charged by HRC's own counsel.

### 3. Petitioners' Reply to HRC's Opposition

Petitioners filed a reply to HRC's opposition memorandum on February 13, 2015. Petitioners countered HRC's argument that they were not a prevailing party by noting they were successful in establishing that Haleakalā Trail was a public right of way under the Highways Act. Petitioners

---

[13] HRC also objected to Petitioners' argument that fee enhancement was appropriate in this case, and noted that enhancement is limited to fees sought under fee-shifting statutes, not the PAG doctrine. See supra note 11.

contended HRC "contorted" the circuit court's March 18, 2014 order, which dismissed Petitioners' claim seeking relief under the Highways Act as a separate cause of action, but expressly left intact Petitioners' ability to "seek conclusions of law and findings of fact that there is a public right of way" under the Highways Act.

As to HRC's arguments regarding the PAG doctrine, Petitioners disputed HRC's claim that the litigation did not vindicate important public policy, emphasizing that the legislative effort to pass S.B. 2728 and amend the Highways Act evinced that this case was of great public interest and importance.  Petitioners contended that HRC "misinterpret[ed]" Irwin Park II, which held that the important public policy vindicated need not "be the subject of the litigation itself." Irwin Park II, 130 Hawai'i at 315, 310 P.3d at 310 (emphasis in original).  Petitioners also disputed HRC's claim that private enforcement was unnecessary.  Petitioners argued that the State's recognition of its legal obligation (e.g., its "recogni[tion] that it had a definite ownership interest in Haleakalā Trail," as evidenced by documents and legal opinions from 2000, 2004, and 2009) and its subsequent failure to act on that obligation necessitated private enforcement.  Similarly, Petitioners argued, entering into a MOA that gave HRC "unilateral control and use of a public resource" constituted an

abuse of discretion and a failure to meet the State's legal obligation to assert ownership over Haleakalā Trail. Petitioners argued that they were entitled to attorneys' fees even after the date the JPA was entered into because they were "solely responsible" for the outcome of the case and "but for [their] effort there never would have been a first phase trial." Irwin Park II, 130 Hawai'i at 317, 310 P.3d at 312 (emphasis in original). Furthermore, Petitioners asserted that "on multiple occasions" they had communicated to the State their belief that the State was in "anticipatory breach" of the JPA. Finally, Petitioners disputed HRC's claim that the case had "no public benefit[,]" arguing that the case "clarifie[d] not only the status of the property at issue [i.e., Haleakalā Trail], but also the status of other similar public properties [i.e., other historic trails]." Petitioners stated that another public benefit of the case is deterrence of "other private landowners who might have been inclined to deny public access to historic trails."

Petitioners persisted in their claim that HRC's refusal to concede private ownership of Haleakalā Trail was in bad faith, and accused HRC of "us[ing] its significant financial resources and political connections to bully a small nonprofit into submission." Petitioners objected to HRC's assertion that Petitioners' failure to prevail on summary judgment was

23

indicative that HRC's ownership claim was not frivolous, explaining that the circuit court had emphasized it could not grant summary judgment because location of the trail was still unclear.

### 4. February 18, 2015 Hearing on Petitioners' First AF Motion

The circuit court held a hearing on February 18, 2015 on Petitioners' first AF motion. The majority of the parties' oral arguments hewed closely to their filings. The parties also debated over the applicability of this court's opinion in Irwin Park II. Petitioners argued that their case was "closely on point" with Irwin Park II and Bitterroot River Protective Ass'n v. Bitterroot Conservation Dist., 251 P.3d 131 (Mont. 2010), a Montana supreme court case cited with approval in Irwin Park II. HRC responded that Irwin Park II was distinguishable from the present case because Irwin Park II involved a park that was formally designated as a historic place under HRS chapter 6E. HRC emphasized that, in Irwin Park II, the State wholly "abandoned its obligation" to protect the park's status as a historic place and "actively sought to have [it] changed from a park into a parking structure." HRC contrasted the properties-- a registered historic place in Irwin Park II versus "a six-foot trail" here--and the State's actions--actively seeking to turn the park into a parking lot in Irwin Park II versus entering

24

into a JPA here--and concluded that <u>Irwin Park II</u> was simply not analogous.

### 5. Circuit Court's Oral Ruling and Order Granting in Part and Denying in Part Petitioners' First AF Motion

On February 25, 2015, the circuit court announced its ruling granting in part and denying in part Petitioners' first AF motion.  The circuit court found that Petitioners were entitled to recover attorneys' fees under the PAG doctrine because:  the litigation "vindicated . . . the important public policy [of] preserving an ancient and unique historic site"; Petitioners' efforts were necessary given "the State's initial reluctance to preserve the trail" and pursuance of a land exchange with HRC; and increasing public access to Haleakalā Trail will "undoubtedly increase" the number of people who seek to use the Trail for recreation and who recognize the Trail's "cultural value[.]"  The circuit court held that Petitioners were not precluded from being considered a prevailing party just because their success in phase one of the trial represented only partial success in their overall case.

The circuit court held that Petitioners were entitled only to attorneys' fees and costs "until the time that [Petitioners] entered into a [JPA] with the State."  The circuit court reasoned that, given the State's cooperation after the JPA

was entered into, it would be "inappropriate" to award costs and fees for that time period:

> Although at times, the joint relationship between the [Petitioners] and the State was not on a solid foundation, these parties continued with their [JPA] of the claims pursued during phase one of the trial. Under these circumstances, it is the Court's view that it would be inappropriate to apply [PAG] doctrine beyond the date of the [JPA].

The circuit court found that the record did not support Petitioners' contention that HRC's private ownership claim was made and maintained in bad faith, and it did not order costs and fees on this basis.

Consistent with its ruling, on March 4, 2015, the circuit court issued an order granting in part and denying in part Petitioners' first AF motion, and specifying for which items HRC was required to pay Petitioners' costs and fees.[14] The circuit court ordered Petitioners to resubmit their request for attorneys' fees and costs, stated that the parties could address the details of the requested fees in supplemental memoranda, and set a hearing at which to announce the award of costs and fees.

### 6.  Parties' Supplemental Memoranda

Pursuant to the circuit court's March 4 Order, the parties filed additional memoranda regarding the amount of

---

[14]    The circuit court ordered HRC to pay Petitioners' reasonable costs and fees for Items 10, 11, 21, and 28 in Petitioners' Second Request for Admissions, and Items 1, 4, 12, 19, 20, 27, 40, and 41 in Petitioners' Third Request for Admissions.

attorneys' fees and costs.  Petitioners requested $396,031.01 in attorneys' fees through March 4, 2013 (the date Petitioners claim the JPA became effective) and $24,871.00 in costs.  HRC requested the circuit court award Petitioners $120,852.00 in attorneys' fees through December 26, 2012 (the date the JPA was signed) and $21,331.31 in costs.

Petitioners noted that since the circuit court did not specify a date through which they were entitled costs and fees, they should be awarded costs and fees through March 4, 2013, the date Petitioners alleged the JPA "became effective." Petitioners emphasized that the circuit court preliminarily approved the JPA on February 4, 2013, subject to a thirty-day objection period.  Since no objection was filed, Petitioners concluded, the JPA became effective one month later, on March 4, 2013, at which time the State "began to jointly prosecute" the case by filing its cross-claim against HRC two days later on March 6, 2013.  HRC countered that Petitioners were entitled to costs and fees only through December 26, 2012, the date the JPA was signed.  HRC contended that the December 26, 2012 date most accurately reflected the circuit court's plain language awarding Petitioners costs and fees through the date the JPA was "entered into" and the JPA's plain language stating the JPA was "entered on this 26 day of December, 2012[.]"  (emphasis added).

Petitioners argued their requested fees were reasonable and again attached their lodestar calculation. Petitioners objected to producing counsel's retention contract and disputed that they were limited to recovering what they actually paid their counsel. HRC countered that, under HRCP Rule 54(d)(2)(B), the court may require the moving party to disclose the terms of its fee agreement, and argued that such an agreement would help the court determine the value of counsel's services. Petitioners contended that their requested rates were "consistent with the standard billing rates" reported that year in the Pacific Business News, and emphasized that HRC's comparison to its own counsel's rate was unhelpful. HRC countered that Pacific Business News report was of limited use because it reported rates that ranged from $150.00 to $500.00 per hour.

Petitioners disputed that they failed to provide proper documentation to support their fee request and addressed items HRC claimed were non-compensable, including: paralegal fees, photocopying, depositions, unsuccessful claims, quarter and block billing, and videography. HRC emphasized its (and the supreme court's) concerns regarding block billing, and argued that block billing combined with Petitioners' heavily redacted

time entries made it impossible to determine the reasonableness of Petitioners' request.[15]

### 7. Circuit Court's Oral Ruling and Order Awarding Petitioners Attorneys' Fees and Costs for Phase One of Trial

On April 22, 2015, the circuit court issued an oral ruling awarding Petitioners attorneys' fees and costs. The circuit court found that Petitioners were entitled to recover attorneys' fees through December 26, 2012, the date the JPA was signed. The circuit court awarded Petitioners $227,560.52 in attorneys' fees, broken down as follows: 526.3 hours at $275.00/hour for Mr. Pierce (totaling $144,732.50); 264.8 hours at $240.00/hour for Mr. Martin (totaling $63,552.00); 92.5 hours at $110.00/hour for paralegal work (totaling $10,175.00); plus general excise tax.

The circuit court found that costs Petitioners incurred from photocopying, taking depositions, and videography were compensable, given the "unusual amount" of photocopying, "great importance" of the depositions, and that the video shown to the jury was "extremely important, [and] highly probative" of the issues. The circuit court also found that the costs and

---

[15] Relying on a citation in <u>Gurrobat</u> to a Ninth Circuit case that approved of a twenty percent reduction for specific block billed entries, <u>see</u> <u>Gurrobat v. HTH Corp.</u>, 135 Hawai'i 128, 135, 346 P.3d 197, 204 (2015)(citing <u>Welch v. Metro. Life Ins. Co.</u>, 480 F.3d 942, 948 (9th Cir. 2007)), HRC requested the circuit court reduce Petitioners' block billed entries by twenty percent.

fees Petitioners incurred pursuing "unsuccessful claims" were compensable, as the "claims created a set of circumstances that in part led to the State joining with" the Petitioners. The circuit court confirmed that Petitioners' billing methods and redactions did "not interfere[] with this Court's ability to evaluate the sums due."

On May 19, 2015, the circuit court filed an order consistent with its oral ruling awarding Petitioners a total sum of $256,494.53.

### b.   For Litigation of Attorneys' Fees (Fees on Fees)

### 1.   Petitioners' Second AF Motion

On May 6, 2015, Petitioners filed "[Petitioners'] Second Motion for Attorneys' Fees and Costs for Phase One of Trial" ("second AF motion"), requesting additional attorneys' fees in the amount of $71,462.58 and costs in the amount of $905.06 for a total of $72,367.64. Petitioners stated their second AF motion was warranted "considering the time, complexities, and difficulties" they faced litigating their first AF motion. Petitioners acknowledged that the circuit court only partially granted their first AF motion, and, accordingly, requested that the court award all of their requested costs and a minimum of fifty percent of requested fees.

Petitioners cited multiple federal appellate decisions in support of their claim that courts have confirmed that "time reasonably devoted to obtaining attorneys' fees is itself subject to an award of fees."[16]  Petitioners requested that the circuit court apply the hourly rates for counsel it had established as reasonable for their first AF motion to the present motion.  Petitioners contended the additional hours they were requesting were reasonable given that their first AF motion "was heavily disputed and litigated by HRC" and required two hearings.

### 2.  HRC's Opposition to Petitioners' Second AF Motion

On June 16, 2015, HRC filed its opposition to Petitioners' second AF motion.  HRC argued that the circuit court should deny the second AF motion because it constituted "a breach of the intent and plain language of the parties' final and executed [Settlement.]"  HRC emphasized that settlements are meant to wind up and end litigation, and noted that the one-page length of the Settlement here "show[ed] that the parties intended this process to be simple and expeditious."  HRC claimed that the language of the Settlement "expressly

---

[16]  Petitioners cited Comm'r of INS v. Jean, 496 U.S. 154, 161 (1990); Valley Disposal, Inc. v. Cent. Vt. Solid Waste Mgmt. Dist., 71 F.3d 1053, 1060 (2d Cir. 1995); Envtl. Def. Fund, Inc. v. EPA, 672 F.2d 42, 62 (D.C. Cir. 1982); and Rosenfeld v. S. Pac. Co., 519 F.2d 527, 530–31 (9th Cir. 1975)).

anticipate[d]" only a single motion for fees and costs: "The parties agree as to follows with respect to [Petitioners'] attorneys' fees motion: The motion will be heard by Judge Cardoza, whose decision may be appealed by either party. . . . [Petitioners'] motion for attorneys' fees will be heard by Judge Cardoza in his courtroom in the normal course."[17] HRC posited that Petitioners "had more than enough opportunity to request and litigate their entitlement" to additional attorneys' fees, and should have included a request for such fees in their first AF motion or in their supplemental memoranda.

HRC argued that the circuit court should deny Petitioners' second AF motion because it "[c]ontravene[d] the [l]aw of the [c]ase [s]et [f]orth" in the circuit court's order awarding Petitioners attorneys' fees for phase one of trial, which stated that "[t]he total sum of attorneys' fees, sanctions, and costs that HRC shall pay [Petitioners] is $256,494.53[.]" HRC asserted that only "cogent reasons" may support modifying the law of the case, see Wong v. City & County of Honolulu, 66 Haw. 389, 396, 665 P.2d 157, 162 (1983), and that Petitioners' second AF motion contained no such reasons to increase the sum awarded in the circuit court's order. HRC also

_____

[17] HRC also contended that under the canon of contractual interpretation expressio unius est exclusio alterius, the Settlement's mention of one motion implied the exclusion of multiple or subsequent motions.

argued that Petitioners were judicially estopped from seeking additional fees and costs not contained in their first AF motion, which "represented to the Court that the pleadings contained the total sum of attorneys' fees and costs . . . [sought] for Phase One of trial."

Finally, HRC argued that Petitioners' second AF motion was unsupported by Hawai'i authority.[18] HRC emphasized that Petitioners failed to cite any Hawai'i case law to support their second AF motion, and instead relied only on non-Hawai'i cases that interpreted specific statutes in awarding fees on fees. HRC also emphasized that none of the Hawai'i cases Petitioners cited regarding the PAG doctrine stated that a party was entitled to fees on fees.

### 3. Petitioners' Reply to HRC's Opposition

Petitioners filed a reply to HRC's opposition memorandum on June 19, 2015. Petitioners disputed HRC's claim that their second AF motion was unsupported by authority, and stated that HRC "fail[ed] to provide an adequate reason why this

---

[18]    HRC cited two Hawai'i cases in support of its claim that Plaintiffs were not entitled to fees on fees: Hawai'i Ventures, LLC v. Otaka, Inc., 116 Hawai'i 465, 476, 173 P.3d 1122, 1122 (2007)(stating that "services necessarily involved in preparing [fee] applications . . . and defending them are not compensable"); and County of Hawai'i v. C&J Coupe Family Ltd. P'ship, 124 Hawai'i 281, 242 P.3d 1136 (2010) (limiting its award of fees on fees to those awarded under HRS § 101-27, which specifically applies to landowners seeking to recover damage resulting from an abandoned or failed condemnation action by the government).

Court should not follow the overwhelming majority of courts" in awarding fees on fees. Petitioners conceded that there was no Hawai'i law on point, but emphasized that this only served to strengthen their reliance on law from the federal circuit and other state jurisdictions.[19] Petitioners, citing Serrano v. Unruh (Serrano IV), 652 P.2d 985, 997 (Cal. 1982), claimed that the "[g]eneral [r]ule" is to award fees on fees, including when attorneys' fees are awarded pursuant to the PAG doctrine. Petitioners distinguished the two Hawai'i cases cited by HRC, noting that their very narrow scope--Hawai'i Ventures (receiverships) and County of Hawai'i (cases under HRS § 101-27)--limited their significance and applicability in this case.

Petitioners contended that HRC's argument that their second AF motion was barred by the Settlement relied on a "strained interpretation" of the Settlement's use of the singular ("motion") as opposed to the plural ("motions"). Petitioners, citing TIG Inc. v. Smart Sch., 401 F. Supp. 2d 1334, 1344 (S.D. Fla. 2005), argued that rules of construction

---

[19] Petitioners noted that HRC also relied on federal authority in its memorandum in opposition, citing to a United States Supreme Court case, Comm'r of INS v. Jean, 496 U.S. 154 (1990). Petitioners emphasized that though HRC cited Jean's statement that "fee litigation should not result in a 'second major litigation[,]'" the Supreme Court ultimately awarded fees on fees in the Jean case.

hold that "[u]se of the singular generally includes the plural, <u>unless it is clear that the parties intended otherwise</u>."[20]

Petitioners posited that the law of the case doctrine and judicial estoppel were inapplicable here because the issue presented in the second AF motion--whether Petitioners were entitled to fees on fees--"has never been before" or been "adjudicated" by the circuit court. Petitioners argued that there was no "representation" to the circuit court that the costs and fees requested in their first AF motion were a "total sum" that would preclude them from seeking additional fees spanning a different time frame. Petitioners explained that HRC's law of the case and judicial estoppel arguments relied on a "strained interpretation" of the phrase "'total sum' of attorneys' fees" in Petitioners' first AF motion and supplemental memoranda and the circuit court's order. HRC, Petitioners argued, was "well aware" that Petitioners' first AF motion sought a "total sum" only for the fees spent litigating the ownership issue. Finally, Petitioners argued that denying their second AF motion "would frustrate or nullify the goals of the PAG doctrine" by "allow[ing] HRC to dilute or dissipate

---

[20] Petitioners also contended that <u>expressio unius exclusio alterius</u> was not applicable here because that canon referred to different items of a similar kind, not items that are exactly the same.

[Petitioners'] fee award by forcing [them] to defend their rightful fee claim through lengthy, uncompensated proceedings."

### 4. Circuit Court's Oral Ruling and Order Denying Petitioners' Second AF Motion

On June 24, 2015, the circuit court held a hearing at which it heard brief oral argument from the parties on Petitioners' second AF motion. Petitioners emphasized that they had "litigated heavily" the issue of whether they were entitled to attorneys' fees under the PAG doctrine and believed that the instant litigation over fees on fees was "related [] to the whole entire issue [as] to whether or not [they] were entitled to any PAG fees."

The circuit court denied Petitioners' second AF motion. The circuit court noted that there was "no Hawaii case law that's directly on point here." The circuit court stated that while the Settlement "contemplat[ed]" a motion for costs and fees, the language of the Settlement "did not specifically address one way or the other whether a second motion for . . . fees" could be filed. In explaining its decision, the circuit court focused heavily on what it believed the parties "contemplated" in their Settlement:

> Given the entire fact pattern here, I'm of the view that what the parties contemplated was a litigation over a motion for fees and costs, and . . . I'm of the view that the appropriate ruling here would be to deny this motion.
>
> I am not suggesting that our appellate courts would view unfavorable a request for fees related to litigation over

36

> fees and costs, but I am of the view that given the settlement agreement that was reached, that what was contemplated here was that there would be litigation, and there was considerable litigation, over the fees and costs as to whether they should be awarded and what that sum should be. I have ruled on that. We've had that fully litigated. I gave the parties the opportunity to further brief those issues, and in the Court's view, that brings the matter to a conclusion as it relates to fees and costs.

The circuit court clarified that the issue of whether a second AF motion was contemplated by the Settlement was not "the one and only issue", but noted that it was a "distinguishing factor" from the case law presented by the parties. The circuit court identified the PAG doctrine as another factor that distinguished this case from the Hawaiʻi case law cited by the parties.

Consistent with its oral ruling, on July 13, 2015, the circuit court filed an order denying Petitioners' second AF motion. On July 11, 2016, the circuit court entered a final judgment consistent with its prior rulings.

## B. ICA Proceedings

On August 10, 2016, Petitioners filed a notice of appeal to the ICA. Petitioners stated they were appealing the circuit court's: (1) March 4, 2015 order granting in part Petitioners' first AF motion; (2) May 19, 2015 order awarding Petitioners attorneys' fees and costs; (3) July 13, 2015 order denying Petitioners' second AF motion; and (4) July 11, 2016 final judgment.

### 1. Petitioners' Opening Brief

Petitioners filed their Opening Brief ("OB") on December 14, 2016. Petitioners, repeating many of the arguments from their two AF motions,[21] argued that the circuit court erred by: holding that Petitioners were not entitled to attorneys' fees after the date the JPA was signed under the PAG doctrine; denying Petitioners fees on fees; and holding that the record did not support a finding that HRC's ownership claim was made in bad faith.[22] Petitioners urged the ICA to reverse and remand Petitioners' first AF motion and the circuit court's award order (to the extent they denied fees after the date of the JPA and under HRS § 607-14.5), and Petitioners' second AF motion in its entirety.

Petitioners repeated their argument that Irwin Park II, along with other persuasive case law cited in Irwin Park II, indicated that government involvement in a case did not preclude a finding that private enforcement was necessary. Petitioners noted that private enforcement can be found to be necessary where the plaintiffs "'bore the brunt of the litigation burden'

---

[21]    See supra sections II.A.4.a.1, 3-4, 6, II.A.4.b.1, 3-4.

[22]    Petitioners claimed that de novo review was warranted here as the circuit court "disregarded rules or principles of law" in deciding whether Petitioners were entitled to fees under the PAG doctrine and the construction of the parties' Settlement. Petitioners claimed that the clear error standard applied to the circuit court's finding that HRC acted in good faith as that issue presented mixed questions of law and fact.

and but for [their] efforts, 'full relief would not have been granted[.]'" Bitterroot, 251 P.3d at 140. Petitioners asserted the circuit court "disregarded" Irwin Park II in holding that private enforcement became unnecessary when the State joined the litigation, and thus, that Petitioners were not entitled to attorneys' fee after the date of the JPA. Petitioners argued that, even after the JPA, they were the "main prosecutors" of the case and bore most of the litigation responsibilities:

> Among other things, Plaintiffs, without any assistance from the State: (1) conducted all the historical research in the case, in a case that spanned a timeframe of 200 years; (2) determined the location of Haleakala Trail, including by conducting all site inspections; (3) prevailed in a number of discovery disputes against HRC; (4) conducted virtually all discovery against HRC . . . ; (5) conducted the HRCP Rule 30(b)(6) deposition of HRC; (6) conducted extensive title research; (7) prepared all of the voluminous exhibits for trial; (8) performed almost all legal research; (9) drafted most of the motions in limine and trial memoranda; (10) performed the direct examination of all key witnesses, including of all the experts . . . ; and (11) performed the cross-examination of HRC's expert.

Petitioners requested the ICA remand for the circuit court "to consider other factors in addition to the [JPA] in its analysis of the necessity of private enforcement," including whether the State would have acted to assert public access to Haleakalā Trail without Petitioners' efforts.

Petitioners argued that the circuit court erred in denying fees on fees, contrary to the rule that the majority of courts have adopted. Petitioners contended that awarding fees on fees would advance the goals of the PAG doctrine by

encouraging private actors to vindicate important public interests and reassuring them that they will be recouped for their efforts. Petitioners, citing Serrano IV, 652 P.2d at 993– 94, emphasized that fee litigation can be lengthy and demanding, and could discourage private actors from pursuing litigation to begin with. Petitioners conceded there was no Hawai'i case law on point here, but urged the ICA to expressly find fees on fees recoverable, "including specifically in the context of the PAG doctrine." Petitioners repeated their argument that the Settlement did not preclude them from filing more than one motion for attorneys' fees, and that the Settlement's use of the singular ("motion") included the plural ("motions") because there is no indication the parties intended otherwise.

Finally, Petitioners argued that HRC's claim of private ownership was frivolous and made in bad faith. Petitioners emphasized that HRC's argument that its ownership was established by "the 'absence of reservation' in relevant deeds" was rejected by the circuit court as irrelevant and inadmissible at trial.

## 2. HRC's Answering Brief

HRC filed its Answering Brief ("AB") on February 22, 2017 and urged the ICA to deny Petitioners' appeal. HRC,

40

repeating many of its arguments from the proceedings before the circuit court,[23] argued that the circuit court did not err in: finding that Petitioners' enforcement was unnecessary beyond the date of the JPA, denying fees on fees, or finding that HRC's ownership claim was not made in bad faith.

HRC argued that because the PAG doctrine is an equitable rule, the appropriate standard of review is abuse of discretion. See Irwin Park II, 130 Hawaiʻi at 313, 310 P.3d at 316. HRC contended that the circuit court was best suited to "evaluate the circumstances, weigh the equities, and determine whether . . . [Petitioners] were 'solely responsible' for the litigation" and neither disregarded the law nor abused its discretion in finding that Petitioners and the State jointly prosecuted the case. HRC repeated its argument that none of the State's post-JPA actions constituted opposition to Petitioners' cause. HRC stated that "[t]he fact that [Petitioners] did not like the [proposed land exchange] does not change that" settlement is a valued public policy. Furthermore, HRC urged the ICA not to award fees on this basis as it "would incentivize third parties acting under the [PAG] doctrine to oppose any and all settlement efforts in order to prolong the litigation and claim more fees."

---

[23] See supra sections II.A.4.a.2, 4, 6, II.A.4.b.2.

HRC argued that the circuit court did not abuse its discretion in denying Petitioners fees on fees because their second AF motion was "wasteful and inefficient" and "violated the intent and express procedural framework" of the Settlement, which "controlled the wind-up of this litigation." HRC repeated its argument that the Settlement contemplated only a single motion for attorneys' fees and costs, and argued that "[h]ad the parties intended to allow [Petitioners] an open-ended number of opportunities to seek attorneys' fees," they could have drafted the Settlement as such. Even if the Settlement did not control, HRC argued, the second AF motion was "untimely and disorganized," and Petitioners should have included a request for all fees in their first AF motion.

Finally, repeating its arguments from before the circuit court, HRC asserted that the circuit court did not clearly err in finding that HRC's ownership claim was not made in bad faith, or abuse its discretion in denying Petitioners fees on this basis.

### 3. Petitioners' Reply

Petitioners filed a reply on March 8, 2017. Petitioners claimed that HRC's arguments regarding "the necessity of private enforcement" prong of the PAG doctrine failed to acknowledge that private enforcement can be "necessary, even where other private and public parties join in

the litigation, where 'but for' the efforts of the plaintiff, there would not have been a vindication of the public's interest." Petitioners also argued that HRC failed to distinguish Irwin Park II and claimed the "determinative factor" in that case was not the State's agreement to co-litigate the case, but rather that "the plaintiff's efforts continued to be necessary" even after the State intervened. Petitioners argued that the JPA strengthened, not weakened, their argument in favor of necessity because the JPA established they "would not only be a necessary party, but would also be the lead party" in the case.

Petitioners clarified that they were not challenging the circuit court's findings of fact in applying the PAG doctrine, but rather the legal conclusion the court drew from these facts, i.e., the conclusion that attorneys' fees were not warranted past the date of the JPA. Petitioners contended that, in light of Irwin Park II's holding, the circuit court failed to make findings of fact sufficient to "deny PAG fees after the execution of the JPA" because "at minimum" it needed to find either "that the public's interest in Haleakalā Trail would have been vindicated even without [Petitioners'] efforts, or that [Petitioners'] efforts were no longer necessary."

Petitioners asserted that HRC's argument that the State's proposed land exchange with HRC did not constitute

43

adverse action "ignores the trial court's finding of fact that the [land exchange] <u>necessitated private enforcement</u>."[24] Petitioners, citing <u>Bitterroot</u>, 251 P.3d at 140, further emphasized that the State's support of S.B. 2728 also constituted opposition because "detrimental legislative efforts are a relevant factor [to the PAG doctrine]."

### 4. ICA's Memorandum Opinion

On February 26, 2021, the ICA published a memorandum opinion affirming the circuit court's final judgment. The ICA found that the circuit court did not abuse its discretion in denying Petitioners attorneys' fees after the date of the JPA.[25] The ICA stated that the necessity prong of the PAG doctrine is met "where the government either 'abandons' or 'actively opposes' the plaintiff's cause such that the plaintiff is 'solely responsible' for advocating the public interest." The ICA validated the circuit court's finding that the State ended its active opposition to Petitioners' case upon signing the JPA and entering into a cooperative relationship with Petitioners.

---

[24] Petitioners quoted the circuit court's determination that Petitioners' "efforts to preserve the trail were necessary in light of the State's . . . joint proposal with HRC to exchange the trail for another site of less importance".

[25] The ICA noted that while it reviewed attorneys' fees and costs awards for abuse of discretion, it reviewed de novo "whether the trial court disregarded rules or principles of law that arise" when applying the PAG doctrine. <u>Irwin Park II</u>, 130 Hawai'i at 313, 310 P.3d at 308.

Thus, the ICA reasoned that the circuit court "acted within its discretion" and "consistent with our precedent" in declining to award Petitioners attorneys' fees after the date of the JPA. The ICA stated that Irwin Park II was distinguishable from the present case because, in that case, the State "actively opposed [the plaintiff's] efforts to vindicate the public interest throughout the entirety of the litigation."  130 Hawai'i at 316–17, 310 P.3d at 311-12.  In contrast, here, the ICA noted that the State only opposed Petitioners' efforts until "the parties entered into a cooperative agreement to jointly prosecute their claims against the HRC."  The ICA also emphasized that, to the extent Petitioners believed the State was violating the JPA, Petitioners "never exercised [their] right to seek relief from the [c]ircuit [c]ourt."

The ICA held that the circuit court did not abuse its discretion in denying Petitioners fees on fees because the Settlement "did not appear to contemplate [Petitioners'] subsequent request for attorneys' fees."  In reviewing the plain language of the Settlement, the ICA noted the use of the singular "motion."  The ICA also reasoned that the record did not show that the parties contemplated additional attorneys' fees motions upon entering into the Settlement.  Specifically, the ICA noted that:  on the date of the Settlement, December 19, 2014, Petitioners had only filed their first AF motion, which

made no mention of additional fees beyond those requested in the motion; Petitioners' second AF motion was filed nearly five months after the Settlement was signed; and when Petitioners first mentioned they would be requesting additional fees at an April 22, 2015 hearing, HRC's counsel stated it was "baffled" by such a request.

Finally, the ICA held that the circuit court did not clearly err in declining to find HRC had maintained its ownership claim in bad faith. The ICA reasoned that "[a]lthough the record may indicate that HRC's claim of ownership of the Haleakalā Trail may have been weak or even without merit, we cannot say that the [c]ircuit [c]ourt clearly erred in determining there was not bad faith on the part of HRC in asserting its claim." The ICA agreed with HRC's argument that the circuit court's rulings denying Petitioners summary judgment and judgment as a matter of law "support[ed] the inference that HRC's claim was not frivolous."

Given its conclusion that the circuit did not abuse its discretion or commit clear error, the ICA affirmed the circuit court's final judgment.

C. Supreme Court Proceedings

1. Petitioners' Application for Writ of Certiorari

Petitioners timely filed their application for a writ of certiorari on May 28, 2021. Petitioners present four

46

questions to this court: (1) whether, under the PAG doctrine, a plaintiff may recover attorneys' fees "from a private defendant also sued by a government entity" where the "plaintiff provided necessary and significant services to the public and/or . . . the government entity continued to actively oppose plaintiff's cause"; (2) whether, under the PAG doctrine, a prevailing party is entitled to recover fees on fees; (3) whether the use of the word "motion" (singular) "prevents a party from filing a supplemental motion to the first" where it is unclear from the record that the parties intended such an interpretation; and (4) whether a court clearly errs by finding a party did not act in bad faith when (a) the party was notified pursuant to HRS § 607-14.5(c) that its claim was not supported by evidence or law, and (b) the court later ruled, "consistent with the prior notice, that the party in fact had no evidence or law in support of its claim."

Petitioners repeat many of the arguments from their filings before the circuit court and ICA. As to the PAG doctrine, Petitioners argue that the ICA gravely erred when it "disregarded the rules and principles of law set forth in Irwin Park II" and affirmed the circuit court's holding denying Petitioners attorneys' fees after the date of the JPA. Petitioners emphasize the equitable nature of the PAG doctrine and argue that as Irwin Park II does not require plaintiffs to

47

"assume the entire burden" of litigation to qualify for attorneys' fees under the PAG doctrine, this court should not impose such a rule here. Petitioners warn that this rule would "essentially requir[e] public interest groups to 'go it alone' or risk being denied attorneys' fees, [which] would be antagonistic to judicial efficiency[.]"

Petitioners emphasize the ICA's "fail[ure]" to recognize that this case presents "the relatively rare scenario" where a party seeks attorneys' fees from a private defendant instead of from the State. The ICA stated that in Irwin Park II, unlike here, the necessity prong of the PAG doctrine was met because the government entity "actively opposed" the plaintiff's efforts "throughout the entirety of the litigation." "Obviously," Petitioners counter, "where litigation is solely against a government entity[,]" the government "by default must be abandoning its duty or" actively opposing the plaintiffs. Thus, Petitioners contend, even though Irwin Park II did not expressly address the question of whether a party is entitled to attorneys' fees under the PAG doctrine where it joins the State in litigation against a private defendant, nothing in Irwin Park II demands that such "fees should be categorically barred."

Petitioners warn of negative consequences should this court adopt a rule requiring plaintiffs to "assume the entire burden of the litigation":

48

> Under this bright line rule, there could never be an award of attorneys' fees under the PAG doctrine where a government entity joins in the prosecution of a private defendant, no matter the circumstances. Indeed, such a rule would even proscribe payment of attorneys' fees where the government entity provides minimal or inadequate representation, or where it continues to be adverse, as is the case here. It would also chill efforts by public interest groups to seek opportunities with a government entity which, in turn, furthers judicial efficiency.

Petitioners also contend the ICA erred by failing to address persuasive federal and state authority cited in Irwin Park II that were "directly on point" and supported the argument that Petitioners need not have assumed the entire burden of enforcement. Petitioners discuss Comm. to Defend Reprod. Rts. v. A Free Pregnancy Ctr., in which a California appellate court found that federal case law showed that private parties were "not barred, by reason of the [government]'s participation therein, from recovering attorney fees" so long as they "rendered necessary and significant services of value to the public." 280 Cal. Rptr. 329, 334-35 (Cal. Ct. App. 1991). Petitioners also reference Waiāhole II--the case in which this court first considered the applicability of the PAG doctrine-- and Serrano v. Priest (Serrano III), 569 P.2d 1303 (Cal. 1977)-- a California case quoted at length in Waiāhole II--noting that those cases implied that private enforcement may be necessary where the "burden of enforcement is not . . . adequately carried" by the government. Waiāhole II, 96 Hawai'i at 30, 25 P.2d at 805 (emphasis added) (quoting Serrano III, 569 P.2d at

1313-14). Petitioners also note that the Irwin Park II court followed the Montana Supreme Court's decision in Bitterroot, which found that "private enforcement continued to be necessary even where the government entity charged with the duty of enforcement jointly prosecuted the case with the plaintiff."

Petitioners contend that the ICA "directly contradicts" this court's decision in Sierra Club v. Dep't of Transp. (Sierra Club II), 120 Hawai'i 181, 202 P.3d 1226 (2009), which held that the necessity prong of the PAG doctrine could be satisfied by showing that the State actively opposed or wholly abandoned the plaintiff's cause. Petitioners emphasize the State's actions negotiating a land exchange with HRC and claim that the ICA "downplay[ed] this active opposition" on the basis that Petitioners should have sought relief under the JPA's provision for material breach. Petitioners argue that as there was no indication the circuit court relied on the JPA's material breach provision in its ruling, the ICA, similarly, should not have relied on this provision. Petitioners also contend the ICA's holding "fails to view the [JPA] in its entirety" and "ignores any notion of judicial efficiency."

Petitioners argue that the ICA also erred by affirming the circuit court's denial of their second AF motion. Petitioners assert the ICA failed to address federal and state law cited in their briefs, law that was particularly important

as the circuit court in part denied the second AF motion because of a lack of relevant Hawai'i case law.  Petitioners also claim the ICA "mischaracterize[d]" the record in finding that the parties had not contemplated a second AF motion, and emphasize that the circuit court "expressly found that the issue of what the parties contemplated [wa]s unclear[.]"  Petitioners conclude by reiterating their argument that this case "demands" a finding that HRC maintained its ownership claim in bad faith. Petitioners ask that the ICA's memorandum opinion be reversed and the case remanded to the circuit court.

**2.   HRC's Response**

HRC timely filed its response on June 28, 2021.  HRC repeats many of its arguments from its AB and contends that the ICA followed the PAG doctrine in affirming the circuit court's judgment.  HRC argues that the ICA was correct in distinguishing Irwin Park II from the present case, and emphasizes that, in Irwin Park II, there were "no less than three governmental entities actively opposing the public cause."  HRC argues that the JPA "distinguishes this case from all of the cases that Petitioner cites in which a private plaintiff claimed to be 'solely responsible' for the litigation despite the government's involvement."  Given the JPA, HRC reasons, Petitioners cannot reasonably claim they were "solely responsible" for the litigation or that the State opposed their cause.  HRC again

51

disputes that the proposed land exchange was "an act of active opposition" by the State, and cites Keahole Def. Coal., Inc. v. Bd. of Land & Nat. Res. in arguing that it was an action aligning with Hawaii's "'strong public policy' favoring settlement." 110 Hawaiʻi 419, 439, 134 P.3d 585, 605 (2006).

HRC argues that although Petitioners' application for cert "relies heavily" on Bitterroot, that "reliance is misplaced[.]" HRC posits that Bitterroot was cited in Irwin Park II primarily to support the argument that a discrete piece of property could implicate the public interest. HRC also argues that Bitterroot is distinguishable because the state agency in that case "had to be forced by the private party into the litigation and did not agree (in writing or otherwise) to jointly prosecute the case" and did not appeal "the decision adverse to its interest[.]" HRC stresses that the PAG doctrine is an equitable doctrine "subject to the court's equitable discretion." HRC emphasizes that the private party in Bitterroot "initiated the action that implicated public rights and sought to extinguish those rights", and differentiates HRC's actions and motives in the present case, asserting that it appeared only "to defend its private rights in good faith."

### 3. Petitioners' Reply

Petitioners filed a reply on July 5, 2021. Petitioners argue that clarification from this court is needed

on (1) "whether joint prosecution with a government entity against a private defendant constitutes an absolute bar to any award of PAG fees . . . no matter the circumstances" and (2) whether private plaintiffs seeking attorneys' fees under the PAG doctrine may recover fees on fees. Petitioners note that precedent from this court is very limited (and ultimately not dispositive) as to the first issue and nonexistent as to the second issue. Thus, Petitioners assert that the case law "currently does not provide sufficient clarity for trial courts" interpreting and applying the PAG doctrine, and urge this court to accept cert.

### III.  STANDARDS OF REVIEW

### A.  Application for Writ of Certiorari

The acceptance or rejection of an application for a writ of certiorari is discretionary. HRS § 602-59(a) (2016). Grounds for a writ of certiorari include "(1) [g]rave errors of law or of fact; or (2) obvious inconsistencies in the decision of the intermediate appellate court with that of the supreme court, federal decisions, or its own decision, and the magnitude of those errors or inconsistencies dictating the need for further appeal." HRS § 602-59(b).

### B.  Attorneys' Fees Awards

"Traditionally . . . an award of attorneys' fees and costs is reviewed for abuse of discretion." Irwin Park II, 130

Hawai'i at 313, 310 P.3d at 308. A trial court abuses its discretion when it "clearly exceed[s] the bounds of reason or disregard[s] rules or principles of law or practice to the substantial detriment of a party litigant." Id. (quoting Maui Tomorrow v. Hawai'i, 110 Hawai'i 234, 242, 131 P.3d 517, 525 (2006)). However, "we review de novo whether the trial court disregarded rules or principles of law . . . in deciding whether or not a party satisfie[d] the three factors of the [PAG] doctrine." Id.

C. Contract Interpretation

Interpretation and construction of a contract is reviewed de novo. Title Guar. Escrow Services, Inc. v. Wailea Resort Co., 146 Hawai'i 34, 456 P.3d 107 (2019), reconsideration denied (Jan. 13, 2020).

D. Allegedly Frivolous Claims Under HRS § 607-14.5

Under HRS § 607-14.5, the circuit court may assess reasonable attorneys' fees and costs against a party in a civil action "upon a specific finding that all or a portion of the party's claim or defense was frivolous[.]" HRS § 607-14.5(a). A trial court's conclusion that a party's claim or defense was made in good faith and was, therefore, not "frivolous" within the meaning of HRS § 607-14.5 presents mixed questions of fact and law, and is subject to review for clear error. See Coll v. McCarthy, 72 Haw. 20, 28, 804 P.2d 881, 886 (1991). "A finding

54

is clearly erroneous where the court is left with a firm and definite conviction that a mistake has been committed." Id. at 28, 804 P.2d at 887.

## IV.  DISCUSSION

Petitioners' cert application presents four questions: (1) whether, under the PAG doctrine, Petitioners may recover attorneys' fees from HRC, a private defendant, where Petitioners co-litigated the case with the State against HRC pursuant to a JPA; (2) whether, under the PAG doctrine, Petitioners are entitled to recover fees on fees; (3) whether the Settlement between Petitioners, HRC, and the State precluded Petitioners from filing a second AF motion; and (4) whether the circuit court clearly erred by finding that HRC's ownership claim was not frivolous or maintained in bad faith under HRS § 607-14.5.

As to the first question, because the State actively opposed Petitioners' cause after the date of the JPA such that Petitioners were, for a time, solely responsible for advancing the public interest, the ICA erred in affirming the circuit court's denial of attorneys' fees past the date of the JPA.  As to the second and third questions:  because (1) Petitioners should be permitted to recover reasonable fees on fees awarded under the PAG doctrine, (2) the plain language of the Settlement does not bar Petitioners' second AF motion, and (3) it is unclear what the parties intended and contemplated regarding fee

litigation, the ICA erred in affirming the circuit court's denial of Petitioners' second AF motion. As to the last question, because Petitioners failed to show that HRC acted in bad faith, the ICA did not err in affirming the circuit court's denial of attorneys' fees under HRS § 607-14.5.

## A. The ICA Erred in Denying Petitioners Attorneys' Fees After the Date of the JPA

The ICA held that the circuit court acted within its discretion in denying Petitioners attorneys' fees under the PAG doctrine beyond the date of the JPA. The ICA reasoned that "pursuant to the [JPA], the State was no longer abandoning or actively opposing [Petitioners'] cause, and [Petitioners] were no longer 'solely responsible' for advocating the public interest." Petitioners contend that they are entitled to attorneys' fees after the date the JPA was signed because their continued efforts were necessary to vindicate the public interest, as the State continued to actively oppose their cause despite the JPA. Petitioners' contentions are supported by law and fact. Pursuant to Waiāhole II, "the role played by the government" must be examined when analyzing the PAG doctrine's "necessity of private enforcement" prong. 96 Hawai'i at 32, 25 P.3d at 807. Here, the circuit court disregarded relevant principles of law in determining that Petitioners' post-JPA enforcement efforts were not necessary: namely, that the

State's post-JPA conduct with respect to the proposed land exchange with HRC constituted "active[] opposition[]" to or "abandonment[]" of Petitioners' vindication of the public interest. Id. at 31, 25 P.3d at 806. Because the ICA and the circuit court disregarded relevant principles of law in determining that Petitioners' post-JPA enforcement efforts were not necessary, we reverse. Petitioners are entitled to attorneys' fees for at least the time period during which the proposed land exchange was negotiated and considered by the State.

Under the "American Rule," "each party is responsible for paying his or her own litigation expenses." Irwin Park II, 130 Hawai'i at 308, 310 P.3d at 303 (quoting Sierra Club II, 120 Hawai'i at 218, 202 P.3d at 1263). The PAG doctrine is an equitable doctrine that functions as an exception to the American Rule. Sierra Club II, 120 Hawai'i at 218, 202 P.3d at 1263. To determine whether the PAG doctrine applies, this court considers three factors: "(1) the strength or societal importance of the public policy vindicated by the litigation, (2) the necessity for private enforcement and the magnitude of the resultant burden on the plaintiff, [and] (3) the number of people standing to benefit from the decision." Id. (quoting Maui Tomorrow, 110 Hawai'i at 244, 131 P.3d at 527). This case

focuses on the second prong:  whether Petitioners' enforcement was necessary given the State's participation under the JPA.

In Waiāhole II, this court concluded that the plaintiffs failed to satisfy the "necessity of private enforcement" prong of the PAG doctrine.  96 Hawaiʻi at 31, 25 P.3d at 806.  The court reasoned that because the plaintiffs were not "the sole representative of the vindicated public interest" and the government did not "abandon[]" or "actively oppose[]" their cause, the plaintiffs were not entitled to attorneys' fees under the PAG doctrine.  Id.  The court emphasized that "[t]he relevant point" was "not the extent of the [plaintiffs'] success on appeal, but, rather, the role played by the government."  Id. at 32, 25 P.3d at 807. (emphasis added).  The court also recognized that although it is the responsibility of government agencies and institutions to "represent the general public . . . and to ensure proper enforcement, for various reasons the burden of enforcement is not always adequately carried by [the government], rendering some sort of private action imperative."  Id. at 30, 25 P.3d at 805 (quoting Serrano III, 569 P.2d at 1313–14).

This court's instruction in Waiāhole II to focus on "the role played by the government" applies here.  Analysis of the State's conduct--at least for the time period during which the State negotiated and advocated for the proposed land

58

exchange--makes clear that even after the signing of the JPA, the burden of enforcement fell disproportionately, and at times, solely, on Petitioners.  Pursuant to the legal principles set forth below, Petitioners satisfy the second prong of the PAG doctrine because (1) the existence of a JPA is not dispositive on the issue of necessity, and (2) because the proposed land exchange constituted active opposition and/or abandonment by the State.

**1.    The JPA Is Not Dispositive on the Issue of Necessity**

The existence of a JPA or other agreement by the State to co-litigate a case does not automatically render a party's private enforcement unnecessary.  Irwin Park II is instructive on this point.  While Irwin Park II did not involve a JPA or written agreement by the government to co-litigate, its holding does support the conclusion that the government's voluntary participation in litigation does not preclude a private plaintiff from recovering attorneys' fees under the PAG doctrine.

In Irwin Park II, Aloha Tower Development Corporation ("ATDC"), a government entity, filed a court petition to expunge the deed restriction on Irwin Park--which had been formally designated as a historic place--that required the property to be maintained as a public park.  130 Hawai'i at 310, 310 P.3d at 305.  Scenic Hawai'i, a preservation non-profit, moved to

intervene in the case to advocate for keeping Irwin Park as a public park and prevent ATDC from turning the property into a parking structure. Id. The City and County of Honolulu ("City") moved to intervene a week after Scenic Hawai'i. Id. The City posited that preserving Irwin Park's status as a public park fell within its obligation to "substantially advance legitimate public interests, including protecting and preserving open space" in urban areas. Id. at 311, 310 P.3d at 306. The City explained "that its intervention was proper because its interest was inadequately represented by the existing parties to the suit[,]" but acknowledged that Scenic Hawai'i "at least to the extent of preserving [Irwin] Park, [had] similar interests as the City." Id. The court granted the City's motion to intervene, and also ordered the State and the DLNR to appear in the case as parties in interest.[26] Id.

The court ultimately denied ATDC's petition and awarded Scenic Hawai'i attorneys' fees pursuant to the PAG doctrine. Id. at 312, 310 P.3d at 307. On appeal, the ICA reversed the award of fees, holding that Scenic Hawai'i failed to meet the second prong of the PAG doctrine because they were not the "sole representative" of the public interest and it was

---

[26] The State and the DLNR responded by supporting ATDC's petition in favor of expungement. Id.

60

"unnecessary" for them to respond to ATDC's petition given the appearances by the respondents to the petition and other persons with reversionary interests in the property, as well as the City's intervention. In re Honolulu Const. & Draying Co. v. State, 129 Hawai'i 68, 75, 293 P.3d 141, 148 (App. 2012). This court reversed the ICA, stating that "a party representing the public interest along with other parties may still be 'solely responsible' for advocating the public interest, despite the fact that private parties are named in the litigation." Irwin Park II, 130 Hawai'i at 316, 310 P.3d at 311 (internal citation omitted). This court found persuasive the other private parties' declarations that "but for" Scenic Hawaii's efforts, "the private parties 'may not have thus participated in this litigation.'" Id. at 317, 310 P.3d at 312. This court concluded that "had Scenic Hawai'i not moved to intervene, ATDC might very well have prevailed in the face of a lack of opposition[.]" Id.

This court did not address what significance the City's intervention posed in evaluating the necessity of Scenic Hawaii's enforcement under the PAG doctrine, but noted that "Scenic Hawai'i maintain[ed] that the City, to some extent, rode [its] coattails . . . after the City's intervention in the suit." Id. In a footnote, this court summarized the law in

61

California, explaining that attorneys' fees under the PAG doctrine are not proscribed "solely because the [government has] initiated a similar action" that has been consolidated with the plaintiffs' action. Id. at 317 n.12, 310 P.3d at 312 n.12 (quoting Comm. to Defend, 280 Cal. Rptr. at 336, then citing In re State Water Res. Control Bd. Cases, 73 Cal. Rptr. 3d 842, 849 (Cal. Ct. App. 2008)).

Along with the above-cited California law, Bitterroot, which the Irwin Park II court cited favorably for its analysis on the third prong of the PAG doctrine, also provides guidance in evaluating how the government's participation in the case bears on a plaintiff's entitlement to attorneys' fees under the PAG doctrine. In Bitterroot, the Montana Supreme Court found that the plaintiff, a preservation non-profit, was entitled to attorneys' fees under the PAG doctrine, despite a state agency's participation as an involuntary plaintiff in the litigation, for its efforts obtaining public access to a stream. 251 P.3d at 139-140. The Montana Supreme Court noted that the agency's involvement in the case--including its failure to "appeal the decision adverse to its interest" by the Bitterroot Conservation District that the stream was not a "natural stream"--"was hardly the usual effort by an agency seeking enforcement of the law." Id. at 140. The Montana Supreme Court found that the plaintiff "alone raised and defended" the issue of whether the stream was

62

a natural stream, and "but for" the plaintiff's challenge, the adverse decision "may very well still stand." Id. Thus, the Montana Supreme Court affirmed the trial court's holding that because the plaintiff took the lead role in the case and "bore the brunt of the litigation burden," and because "full relief would not have been granted without its effort[,]" the plaintiff satisfied the second prong of the PAG doctrine, despite the government's participation in the case. Id.

In the present case, as in Irwin Park II (and Bitterroot), "but for" Petitioners' efforts, the outcome of the litigation--i.e., the State being declared owner of Haleakalā Trail--may not have materialized given the State's efforts to approve the land exchange with HRC. 130 Hawai'i at 317, 310 P.3d at 312. And, as in Irwin Park II, had Petitioners not (1) instigated the present litigation, (2) negotiated a JPA with the State, and (3) vigorously prepared and led the litigation effort against HRC, HRC "might very well have prevailed in the face of a lack of opposition" from the State. Id.

### 2. The Proposed Land Exchange Constituted Active Opposition and/or Abandonment

The State contends that the proposed land exchange did not constitute "active opposition" within the meaning of the PAG doctrine. However, it is clear that by pursuing a deal in which the State agreed to surrender its interest in Haleakalā Trail,

63

after it had agreed to jointly prosecute Petitioners' case by asserting an ownership claim against HRC, the State was actively opposing or abandoning Petitioners' cause of preserving Haleakalā Trail for the purpose of public access.  Had the land exchange been finalized, the State would have given up title to Haleakalā Trail, and control over the Trail would have remained with HRC, who had consistently denied public access to the Trail.

Furthermore, the circuit court found in its order partially granting Petitioners' first AF motion that Petitioners' enforcement efforts were, in fact, "necessary in light of the State's initial reluctance to preserve the trail and its joint proposal with HRC to exchange the trail for another site of less importance."  (emphases added).  Despite finding that Petitioners' actions were necessary in part because of the proposed land exchange, the circuit court awarded attorneys' fees only up until the date of the JPA (December 26, 2012), even though the land exchange was proposed and negotiated after the date of the JPA (in or about September 2013).  In so doing, the circuit court disregarded the relevant principle of law that active opposition by the State may render a plaintiff's enforcement efforts necessary and warrant an award of attorneys' fees under the PAG doctrine to cover such efforts.  See Waiāhole II, 96 Hawai'i at 31, 25 P.3d at 806.  Accordingly, the ICA erred

in affirming the circuit court's holding that Petitioners were not entitled to any attorneys' fees after the date of the JPA; Petitioners are entitled to attorneys' fees after the date of the JPA through at least the time period during which the State negotiated and advocated for the land exchange with HRC.

While it is clear that the proposed land exchange constituted active opposition or abandonment within the meaning of the PAG doctrine, it is unclear whether the State's other actions (e.g., supporting S.B. 2728) also rose to the level of active opposition or abandonment. Likewise, it is unclear whether the State's actions in this case aligned with "the usual effort by an agency seeking enforcement of the law" or whether Petitioners "bore the brunt of the litigation burden"[27] such that attorneys' fees are warranted through the end of trial, despite the State's role as a co-litigant. Bitterroot, 251 P.3d at 140. Although the circuit court found that the relationship between

---

[27] Petitioners claim that they "single-handedly prepared all the evidence for trial, drafted the vast majority of the motions in limine and trial memoranda and were solely responsible for the direct examination of all key witnesses." (internal quotation marks omitted) Specifically, Petitioners contend that, without any assistance from the State, they:

(1) conducted all the historical research in the case, in a case that spanned a timeframe of 200 years; (2) determined the location of Haleakala Trail, including by conducting all site inspections; (3) prevailed in a number of discovery disputes against HRC; (4) conducted virtually all discovery against HRC . . . ; (5) conducted the HRCP Rule 30(b)(6) deposition of HRC; (6) conducted extensive title research; (7) prepared all of the voluminous exhibits for trial; (8) performed almost all legal research; (9) drafted most of the motions in limine and trial memoranda; (10) performed the direct examination of all key witnesses, including of all the experts . . . ; and (11) performed the cross-examination of HRC's expert.

Petitioners and the State was not always "on a solid foundation" after the JPA, it made no findings as to whether the State's (1) support of S.B. 2728 constituted "active opposition" and (2) participation in preparation for and at trial rendered Petitioners' enforcement efforts unnecessary. By addressing these questions on remand, the circuit court should determine to what extent Petitioners are entitled to post-JPA attorneys' fees under the PAG doctrine.

**B.    The ICA Erred in Affirming the Circuit Court's Denial of Petitioners' Second AF Motion**

Petitioners contend that the circuit court erred in denying their second AF motion. The ICA rejected this argument, holding that the circuit court did not abuse its discretion in denying Petitioners' second AF motion because the Settlement "did not appear to contemplate [Petitioners'] subsequent request for attorneys' fees." The ICA erred in affirming the circuit court's denial of Petitioners' second AF motion because the plain language of the Settlement does not preclude motions subsequent to Petitioners' first AF motion, and it is unclear what the parties contemplated with regard to further litigation over costs and fees. To the extent that the terms of the Settlement are ambiguous and intent of the parties is unclear, this case should be remanded to the circuit court. Moreover, as discussed infra in section IV.B.2, Petitioners' attorneys' fees

and costs recoverable under the PAG doctrine include those reasonably incurred in litigating the initial claim for fees.

### 1. The Plain Language of the Settlement Did Not Preclude Petitioners from Filing a Second AF Motion

HRC argues that "[t]he express terms of the Settlement Agreement called for a single motion and barred [Petitioners'] attempt to file a second motion for attorneys' fees."[28] Petitioners disagree that the Settlement's use of the singular "motion" precluded them from filing their second AF motion, and counter that, under the rules of contract interpretation, "the use of the singular generally includes the plural, unless it is clear that the parties intended otherwise."  The ICA found that the circuit court did not abuse its discretion in rendering a decision consistent with HRC's argument.  However, the ICA erred

---

[28]     The redacted Settlement, in relevant part, reads:

The parties agree as follows:

All claims in Phase I of the trial are final and nonappealable and HRC may not request a new trial.

All claims for Phase II of the trial are dismissed with prejudice by Plaintiffs.

The parties agree as follows with respect to Plaintiffs[sic] attorneys' fees motion:

- The motion will be heard by Judge Cardoza, whose decision may be appealed by either party[.]
- HRC further agrees that it will not seek any form of land exchange of Haleakala Trail with the State.
- Plaintiff's[sic] motion for attorneys' fees will be heard by Judge Cardoza in his courtroom in the normal course[.]

because the plain language of the Settlement does not unambiguously preclude Petitioners from filing a second AF motion.

Settlement agreements are contracts and are, thus, subject to principles of contract law. Exotics Hawai'i-Kona, Inc. v. E.I. Du Pont De Nemours & Co., 116 Hawai'i 277, 288, 172 P.3d 1021, 1032 (2007). "Under principles of contract interpretation, an agreement should be construed as a whole and its meaning determined from the entire context and not from any particular word, phrase, or clause." Santiago v. Tanaka, 137 Hawai'i 137, 155, 366 P.3d 612, 630 (2016). Contractual terms "should be interpreted according to their plain, ordinary, and accepted sense in common speech." Id. And if those terms are "reasonably susceptible to more than one meaning[,]" the court may deem the contract ambiguous. Hawaiian Ass'n of Seventh-Day Adventists v. Wong, 130 Hawai'i 36, 45, 305 P.3d 452, 461 (2013). If a contract is ambiguous, the court may properly consider evidence beyond the four corners of the contract to determine "the intent of the parties and circumstances under which the agreement was executed." Id. at 45-46, 305 P.3d at 461-62; see also 29 Am. Jur. 2d Evidence § 1097 (2021).

Considering the Settlement as a whole, the use of the term "attorneys' fees motion" is ambiguous because, in addition

to HRC's interpretation, it can also be reasonably construed as setting forth the terms for one particular motion for attorneys' fees (i.e., Petitioners' first AF motion), without establishing the terms for or precluding subsequent motions (e.g., Petitioners' second AF motion).  Furthermore, the language of the Settlement enumerates specific actions related to the litigation the parties are precluded from taking--for example, barring HRC from appealing the claims adjudicated in phase one of the trial, requesting a new trial, or "seek[ing] any form of land exchange of Haleakala Trail with the State[,]" and barring Petitioners from bringing their phase two claims against HRC-- but does not expressly preclude Petitioners from filing a second AF motion.

HRC contends that the short length of the Settlement shows that the parties "intended [the litigation wind-up] process to be simple and expeditious[,]" which supports its argument that the Settlement bars Petitioners' second AF motion. However, the short length of the Settlement, together with the fact that it is handwritten with numerous edits and corrections, and that it lacks any indication that it is a fully integrated document constituting the entire agreement between the parties, weighs in favor of considering extrinsic evidence to resolve the Settlement's ambiguous use of the term "attorneys' fees motion."

Considering the circumstances under which the Settlement was executed also leads to a conclusion that the use of the term "attorneys' fees motion" is ambiguous. The Settlement was signed on December 19, 2014, the same day the circuit court entered its Judgment for phase one of trial. At that time, Petitioners had already filed their first AF motion, but litigation on the motion did not begin in earnest until February 2015. The circuit court partially granted Petitioners' first AF motion on March 4, 2015, and issued an oral ruling on April 22, 2015 specifying the fees and costs Petitioners were entitled to. Petitioners filed their second AF motion on May 6, 2015, just two weeks after the circuit court issued its oral ruling on Petitioners' first AF motion.

HRC claims that Petitioners' second AF motion is "untimely" and that Petitioners should have included their request for additional fees in their first AF motion. This argument ignores the conditional nature of a request for fees on fees. Petitioners spent over five months litigating their (ultimately successful) claim for attorneys' fees. Petitioners would not have filed their second AF motion if they had not prevailed on their first AF motion, and the substance of their second AF motion (i.e., the amount of costs and fees requested) depended heavily on the nature of the litigation of their first AF motion. Petitioners could have, in theory, included in their

first AF motion a conditional request for fees on fees. But Petitioners could not have known, back in December 2014, the time they would spend or monetary amount they would incur litigating their first AF motion. To that extent, a request for fees on fees in their first AF motion could easily have been dismissed as unripe, incomplete, or unreasonable.

Given that the express terms of the Settlement do not unambiguously preclude Petitioners' second AF motion, the issue of what the parties contemplated regarding further fee litigation should be remanded for the circuit court's consideration. The circuit court should consider all relevant extrinsic evidence, including that this fee litigation was brought in the context of the PAG doctrine, an equitable doctrine aimed at encouraging--and fairly compensating--private parties to vindicate the public interest. See Waiāhole II, 96 Hawai'i at 30, 25 P.3d at 805.

2. **Fees Recoverable Under the PAG Doctrine Include Those Reasonably Incurred in Litigating the Initial Claim for Fees**

Petitioners argue that while there is no Hawai'i case law on point, the "overwhelming majority of courts" award fees on fees in the context of the PAG doctrine, and that this rule aligns with the policy goals of the PAG doctrine. Serrano IV, 652 P.2d at 997. Petitioners explain, as the California Supreme Court articulated in Serrano IV, that the PAG doctrine will

"often be frustrated" or "nullified, if [fee] awards are diluted or dissipated by lengthy, uncompensated proceedings to fix or defend a rightful fee claim." 652 P.2d at 992. HRC does not dispute Petitioners' argument, but counters that even if this court were to allow PAG plaintiffs to collect fees on fees, Petitioners would not be eligible for such an award because their second fee request was "inflated, unorganized, untimely, improperly documented, overreaching, or otherwise unreasonable." HRC's argument is without merit. For the reasons set forth herein, we now clarify that (1) fees and costs awarded pursuant to the PAG doctrine include those reasonably incurred in litigating the initial claim for fees, and (2) Petitioners are eligible to recover fees on fees.

This court's rationale in adopting the PAG doctrine, as set forth across Waiāhole II, Sierra Club II, and Irwin Park II, favors permitting the awarding of fees on fees.[29] We first considered and summarized the arguments in favor of the PAG doctrine in Waiāhole II, but ultimately held that it was not applicable to the case before us. 96 Hawaiʻi at 32, 25 P.3d at 807. We quoted the California Supreme Court at length, stating that, in cases where a private plaintiff has carried the

---

[29] Unlike California, which has codified the PAG doctrine, see Cal. Civ. Proc. Code § 1021.5, in Hawaiʻi the PAG doctrine is wholly judicially imposed, see, e.g., Sierra Club II, 120 Hawaiʻi at 218, 202 P.3d at 1263.

72

enforcement burden that has otherwise belonged to the government, "[o]ne solution . . . within the equitable powers of the judiciary to provide, is the award of <u>substantial attorneys [sic] fees</u> to those public-interest litigants and their attorneys . . . who are successful in such cases, to the end that support may be provided for the representation of interests of similar character in future litigation." <u>Id.</u> at 30, 25 P.3d at 805 (quoting <u>Serrano III</u>, 569 P.2d at 1313-14 (emphasis added)). "[S]ubstantial" attorneys' fees are justified in cases where a private plaintiff assumes the government's enforcement burden because such cases are "of enormous significance to the society as a whole" and often involve "extremely complex" issues that require "time-consuming and costly" presentation. <u>Id.</u> In short, we stated, "the purpose of the [PAG] doctrine is to promote vindication of important public rights." <u>Id.</u> (quoting <u>Arnold v. Dep't of Health Servs.</u>, 775 P.2d 521, 537 (Ariz. 1989)).

In <u>Sierra Club II</u>, we awarded attorneys' fees under the PAG doctrine for the first time to plaintiffs who procured a permanent injunction against an inter-island ferry project while an environmental assessment was being prepared. 120 Hawai'i at 189-90, 202 P.3d at 1234-35. In imposing attorneys' fees against both the public (Department of Transportation) and private (Hawai'i Superferry, Inc.) entities in the case, we

explained that we "s[aw] no reason not to apply the [PAG] doctrine to a private defendant." Id. at 225, 202 P.3d at 1270. We quoted the Arizona Court of Appeals at length, articulating why it was appropriate to apply the PAG doctrine in this instance: "[W]e do not find that the exclusive purpose of the [PAG] doctrine is to impose the cost of vindicating public rights on the public itself. Awarding [attorney's [sic]] fees against private defendants in appropriate cases will promote important public rights to the same extent as awarding fees against governmental defendants." Id. (quoting Ariz. Ctr. For Law in the Pub. Interest v. Hassell, 837 P.2d 158, 173 (Ariz. Ct. App. 1991).

Finally, in Irwin Park II, we discussed the importance of the "general precedential value" of litigation brought under the PAG doctrine. 130 Hawaiʻi at 319, 310 P.3d at 314. In Irwin Park II, we noted that while the litigation "concerned a specific property, . . . the result vindicated the dedication of public parks and historic sites across the state[,]" id. at 318, 310 P.3d at 313, and ensured the future "enforcement of the government's commitments to the preservation of such parks and historic sites[.]" Id. at 319, 310 P.3d at 314. See also, Waiāhole II, 96 Hawaiʻi at 31, 25 P.3d at 806 (noting that "all of the citizens of the state, present and future, stood to

benefit from the decision"). This court thus adopted the PAG doctrine to promote the vindication of public rights.

Allowing fees on fees in the PAG context is entirely consistent with the purpose of vindicating public rights, as precluding fees on fees would have a chilling effect on vital public interest litigation. We agree with the warning set forth in Serrano IV that the PAG doctrine would be "nullified" if fee awards are "diluted or dissipated by lengthy, uncompensated proceedings to fix or defend a rightful fee claim." 652 P.2d at 992. Our considerations regarding the PAG doctrine in Waiāhole II, Sierra Club II, and Irwin Park II thus favor permitting plaintiffs to recover reasonable fees on those fees awarded under the PAG doctrine.

In the present case, the issues were complex, requiring exceptional historical and title research, calculations to determine the location and bounds of Haleakalā Trail, and numerous physical site inspections. See Waiāhole II, 96 Hawai'i at 30, 25 P.3d at 805. The litigation was also lengthy, beginning in January 2011 (when Petitioners filed their complaint) and extending through May 2015 (when the circuit court granted Petitioners' first AF motion). See id. Finally, in procuring a judgment that the State owned Haleakalā Trail (in and of itself a culturally and historically important trail), Petitioners established important general precedent for future

parties who may seek to vindicate other historic trails or rights of way under the Highways Act.  See Irwin Park II, 130 Hawai'i at 319, 310 P.3d at 314.

Given the Petitioners' success in the underlying litigation and on their first AF motion under the PAG doctrine, and given the policy goals this court has articulated in adopting and applying the PAG doctrine, we now clarify that Petitioners' attorneys' fees and costs recoverable under the PAG doctrine include those reasonably incurred in litigating the initial fee claim.  Therefore, the ICA erred in affirming the circuit court's denial of Petitioners' second AF motion.

## C. The ICA Did Not Err in Finding that HRC Did Not Act in Bad Faith

Petitioners contend that because they notified HRC, pursuant to HRS § 607-14.5(c), that there was no law or evidence supporting HRC's claim that it owned Haleakalā Trail, and because the circuit court later entered a judgment "consistent" with this notice, the circuit court (1) clearly erred by finding that HRC had not maintained its ownership claim in bad faith and (2) abused its discretion in denying Petitioners attorneys' fees under HRS § 607-14.5.  HRC counters that this argument is akin to claiming that HRC "acted in bad faith by defending its case at all."  The ICA affirmed the circuit court's finding that

76

HRC's claim was not frivolous or made in bad faith. The ICA did not err in affirming the circuit court.

Separate from attorneys' fees entered under the PAG doctrine, the circuit court may impose "a reasonable sum for attorneys' fees and costs" against a party to a civil action under HRS § 607-14.5 "upon a specific finding that all or a portion of the party's claim or defense was frivolous[,]" HRS § 607-14.5(a), and "not reasonably supported by the facts and the law in the civil action[,]" HRS § 607-14.5(b). A frivolous claim or defense is one that is "so manifestly and palpably without merit, so as to indicate bad faith on the [pleader's] part such that argument to the court was not required." Tagupa v. VIPDesk, 135 Hawai'i 468, 479, 353 P.3d 1010, 1021 (2015) (quoting McCarthy, 72 Haw. at 29-30, 804 P.2d at 887). We have clarified that "[a] finding of frivolousness is a high bar; it is not enough that a claim be without merit[.]" Id.

As evidence of HRC's bad faith, Petitioners emphasize that when they provided HRS § 607-14.5(c) notice to HRC, which "thoroughly discuss[ed]" the reasons HRC's ownership claim was not supported by law or fact, HRC responded with a "one sentence rejection[.]" Petitioners also claim that the circuit court's phase one judgment was "entirely consistent with the prior notice." Even taking everything Petitioners claim as true, all this shows is that HRC's ownership claim was "weak" or "without

merit[.]"  A meritless claim, without more, is not sufficient to show that the claim is frivolous or that the party acted in bad faith.  See Tagupa, 135 Hawai'i at 479, 353 P.3d at 1021.  Therefore, the circuit court did not abuse its discretion in finding HRC's ownership claim was not frivolous or made in bad faith.  As such, the circuit court did not err in denying Petitioners attorneys' fees under HRS § 607-14.5.  The ICA did not err in holding the same.

## V.  CONCLUSION

For the foregoing reasons, the ICA's March 31, 2021 Judgment on Appeal is vacated.  Awarding fees on fees under the PAG doctrine is permitted, and furthers the doctrine's rationale of vindicating important public rights.  The JPA was not dipositive in analyzing Petitioner's eligibility for attorneys' fees under the PAG doctrine.  Petitioners' second AF motion was not precluded as a matter of law, and Petitioners are eligible for fees on fees.  The case is remanded to the circuit court for proceedings consistent with this opinion.

| | |
|---|---|
| Peter N. Martin and Tom Pierce, for appellants | /s/ Mark E. Recktenwald |
| | /s/ Paula A. Nakayama |
| Francis P. Hogan, Michael W. Gibson and Benjamin M. Creps, for appellee Haleakala Ranch Company | /s/ Sabrina S. McKenna |
| | /s/ Michael D. Wilson |
| | /s/ Todd W. Eddins |

